**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00653-REB-CBS

SONYA COLLINS,

    Plaintiff,

v.

AMERICAN GENERAL LIFE INSURANCE COMPANY,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Defendant's Motion For Summary Judgment** [#16], filed July 25, 2006.  I grant the motion.

### I.  JURISDICTION

I have jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d

1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

This lawsuit implicates a $25,000 life insurance policy issued on October 28, 1985, to Leland W. Keemer ("Mr. Keemer"), plaintiff's father. Mr. Keemer elected to pay premiums on the policy annually. (***See*** Def. Motion App., Exh. A at 3 & 5.) However, the policy explains that "[t]he actual amount and frequency of premium payments will affect the cash values and the amount and duration of insurance. Please

refer to the Policy Values Provision for a detailed explanation." (*Id.*, Exh. A at 5.)  The Policy Values Provision explains how the accumulation value of the policy is determined at any given point.  This section explains also that the policy is subject to a monthly deduction for various costs and expenses and describes how those charges are calculated.  (*Id.*, Exh. A at 7.)  Finally, the policy details the consequences where the accumulation value is insufficient to satisfy the monthly deduction:

> If the Accumulation Value less any outstanding policy loan on a deduction day is not enough to meet the monthly deduction for the current month, this policy will remain in force during the 61-day period that follows.  Such 61-day period is referred to in this policy as the "Grace Period". . . .
>
> If you do not pay enough premium to cover the monthly deduction by the end of the Grace Period, this policy will terminate without value.  However, at least 31 days prior notice must be mailed by us to your last known address, and to the assignee of record, if any.  If death occurs during the Grace Period, monthly deductions through the policy month in which death occurred will be deducted from the proceeds.

(*Id.*, Exh. A at 8.)

On two occasions, the accumulation value of Mr. Keemer's policy was insufficient to cover the monthly deduction.  On the first occasion, defendant sent Mr. Keemer a "Grace Period Notice" on December 13, 1998, informing him that "even though you may have been making regular premium payments on your policy, the current values are insufficient to cover the monthly charges due November 28, 1998.  This policy is in its grace period and will terminate without value unless a payment of $1,971.97 is received prior to January 13, 1999." (*Id.*, Exh. E.)  In response to this notice, Mr. Keemer remitted the amount due.  Defendant sent a similarly worded Grace

Period Notice to Mr. Keemer on September 14, 2003, alerting him that the accumulation value of the policy had been inadequate to meet the monthly deduction as of August 28, 2003, and that the policy would terminate unless a payment of $486.52 was received prior to October 15, 2003. (*Id.*, Exh. F.) Defendant received no response to this notice. It, therefore, terminated the policy on October 28, 2003, and sent Mr. Keemer a notice to that effect on October 31, 2003. That notice advised Mr. Keemer of his ability to request reinstatement of the policy, but defendant received no such request. (*Id.*, Exh. B at 2, ¶ 11 & Exh. G.)

Mr. Keemer died on December 3, 2003. Just three weeks later, on December 24, 2003, Mr. Keemer's wife, the primary beneficiary of the policy, also died. Plaintiff then asserted a claim for benefits as the contingent beneficiary. Defendant denied that claim on the ground that the policy had lapsed for non-payment of premiums. This lawsuit ensued. Herein, plaintiff asserts claims for breach of contract, willful and wanton breach of contract, bad faith breach of contract, violation of the Colorado Consumer Protection Act ("CCPA"), and equitable estoppel. Defendant has moved for summary judgment as to all claims asserted.

With respect to the breach of contract claims, plaintiff alleges that the policy had not lapsed because Mr. Keemer never received either the September 14, 2003, Grace Period Notice or the October 31, 2003, policy lapse notice. (Plf. Resp. App., Exh. 3 at 1-2, ¶¶ 4-7.) Initially, I note that whether Mr. Keemer received the October 31, 2003, notice that the policy had lapsed is irrelevant to any breach of contract claim because

nowhere does it appear that the policy required such notice.[1]  Rather, the policy only entitled Mr. Keemer to at least 31 days prior notice before termination could become effective.  (Def. Motion App., Exh. A at 8.)  The September 14, 2003, Grace Period Notice was mailed on September 14, 2003, 44 days before defendant terminated the policy on October 28, 2003.  Therefore, the only material issue is whether Mr. Keemer received the Grace Period Notice.

Under Colorado law, evidence that a corporation mailed a document in the normal course of business creates a rebuttable presumption that the document was received by the addressee.  *See Trujillo v. Industrial Commission of State of Colorado*, 735 P.2d 211, 214 (Colo. App. 1987); *Wiley v. Bank of Fountain Valley*, 632 P.2d 282, 286 (Colo. App. 1981); *National Motors, Inc. v. Newman*, 484 P.2d 125, 126 (Colo. App. 1971).  Defendant's affidavit testimony is sufficient to satisfy this burden.  It, therefore, falls to plaintiff to establish a genuine issue of material fact regarding failure of receipt.  A recipient's testimony that he has not received such notice is sufficient to overcome the presumption.  *Trujillo*, 735 P.2d at 214; *Wiley*, 632 P.2d at 286.  Of course here the matter is more complicated because it is not the intended recipient, Mr. Keemer, who denies receipt.  Rather, I must decide whether plaintiff's testimony that, to her knowledge, Mr. Keemer never received the Grace Period Notice, and that she has found no such document in his files, is sufficient to rebut the presumption of receipt.

---

[1]  Nor is such notice required by statute.  *See* §10-7-102, C.R.S.

I conclude that on the facts of this case, it is not.  There is no evidence that at the time the Grace Period Notice was sent to Mr. Keemer, plaintiff was responsible in any way for handling his mail, bills, or other household obligations.  She did not assume those responsibilities until November 2, 2003, some six weeks later.  (Plf. Resp. App., Exh. 3 at 1, ¶ 3.)  Therefore, plaintiff's testimony that Mr. Keemer never received the notice "to my knowledge," without further proof as to the basis for plaintiff's knowledge regarding Mr. Keemer's treatment of such documents prior to the time she became his full-time care giver, is insufficient to create a fact issue for trial.[2]  Plaintiff's additional testimony that a search of Mr. Keemer's files failed to turn up the Grace Period Notice does not change this conclusion.  Absent some evidence establishing that plaintiff knew where her father kept important papers or was familiar with his habits and customs as to dealing with such documents, or testimony to like effect, the mere absence of the document from some unspecified group of files is not sufficient to create a triable fact issue.  For these reasons, defendant is entitled to summary judgment as to plaintiff's breach of contract claims.

Plaintiff's CCPA and equitable estoppel claims also cannot survive summary judgment.  These claims are based on the allegation that because Mr. Keemer was paying annual premiums, he was reasonably justified in believing that the sixty-one day grace period would not commence until the expiration of the annual policy period, that is, October 28, 2003.  This contention is belied by the plain language of the policy.  ***See***

---

[2] Plaintiff does produce evidence suggesting that Mr. Keemer failed to receive a copy of his annual statement on one occasion in 1997.  (***See*** Plf. Resp. App., Exh. 4.)  This highly attenuated incident does not alter my conclusion that plaintiff cannot make out a triable fact issue as to lack of receipt.

***Broderick Investment Co. v. Hartford Accident. & Indemnity Co.***, 954 F.2d 601, 606 (10th Cir.) ("Under Colorado law, the plain language of the contract controls[.]") (citing ***Chacon v. American Family Mut. Ins. Co.***, 788 P.2d 748 (Colo.1990)), ***cert. denied***, 113 S.Ct. 189 (1992).  The policy explains clearly that although funded by an annual premium, it is subject to a monthly deduction for certain costs and expenses. Moreover, the policy clearly ties the sixty-one day grace period to the date on which the accumulation value becomes insufficient to meet a monthly deduction, not to the date the annual premium is due.  Given these explicit policy terms, plaintiff's CCPA and equitable estoppel claims cannot survive summary judgment.

## IV.  CONCLUSION

Although the result is unfortunate in this case, I find that there is no genuine issue of material fact for trial in this matter and that defendant is entitled to summary judgment as to all plaintiff's claims asserted in this lawsuit.

**THEREFORE, IT IS ORDERED** as follows:

1.  That  **Defendant's Motion For Summary Judgment** [#16], filed July 25, 2006, is **GRANTED**;

2.  That plaintiff's First, Second, Third, Fourth, and Fifth Claims for Relief asserted in the First Amended Complaint and Jury Demand are **DISMISSED WITH PREJUDICE**;

3.  That judgment **SHALL ENTER** on behalf of defendant, American General Life Insurance Company, and against plaintiff, Sonya Collins, as to all claims and causes of action asserted herein;

4.  That **Plaintiff's Motion To Supplement Her Response to Defendant's Motion For Summary Judgment**, [#26], filed September 20, 2006, is **DENIED AS MOOT**;

5.  That the Trial Preparation Conference currently scheduled for September 14, 2007, at 9:00 a.m., as well as the trial currently scheduled to commence on October 1, 2007, are **VACATED**; and

6.  That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated March 9, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**